In the Matter of the Petition of D. C. Bradley and Others for the Establishment of Drainage District No. 1, of Appanoose County, Iowa, and to Change the Course of the River Chariton.

Establishment of Drains: APPEAL TO DISTRICT COURT: *Presumptions and Procedure.* Code, section, 1941, provides that if, on the first hearing of a petition for the establishment of drains, the board of county supervisors shall find such improvement conducive to public health, convenience, or welfare, and no claims have been made for damages, they shall locate and establish the same; but, if any such claim has been made, further proceedings shall be adjourned, and the county auditor shall appoint appraisers to assess the damages. It appeared that in such proceedings the first meeting was adjourned for assessment of damages, and afterwards a decision was rendered adverse to the petitioners. *Held,* that a motion for an order establishing the drain need not be sustained, on appeal to the district court, on the theory that the statute required a finding in favor of the establishment of the drain before damages could be assessed, and that, therefore, it was to be presumed that such finding was made, though it did not appear of record, as it did appear that the contrary finding was made, though it might not have been made in the order of sequence provided.

COSTS MAY BE ADJUDGED AGAINST LOSING PARTY: Though proceedings under Code, title 10, chapter 2, for establishment of drains on petition of residents and electors, in which remonstrants appear, are not conducted by parties plaintiff and defendant, there are, nevertheless, parties, and the costs are properly adjudged under Code, section 3853, granting costs to the successful against the losing party.

*Judgment not limited to cost bond.*    Though Code, title 10, chapter 2, providing for the establishment of drains by petition, require petitioners to give bond for costs in case the petition is refused, judgment may be entered against the petitioners for costs, and the parties entitled thereto need not look to the bond alone therefor.

**Assignment of Errors.**    Where the action of the court in rendering judgment for costs against the sureties on a bond therefor is assigned as error, but the record does not show who the sureties are, nor that they have appealed, the assignment need not be considered.

*Appeal   from   Appanoose   District   Court.*—HON. M. A. ROBERTS, Judge.

WEDNESDAY, OCTOBER 8, 1902.

THE facts are sufficiently stated in the opinion.— *Affirmed.*

*Baker & Baker* for appellants.

*C. F. Howell* for appellees.

WEAVER, J.—On September 7, 1897, D. C. Bradley and one hundred or more other persons, all residents and electors of Appanoose county, presented a petition to the board of supervisors, alleging that the Chariton river in said county, by its overflow and backwater at each recurring freshet, created stagnant pools, ponds, and lagoons, injurious to public health and public convenience, and rendered comparatively valueless many thousands of acres of land, which would otherwise be rich and productive, wherefore it was asked that said river be straightened, and a system of drainage be established for the remedy of such conditions, and that the cost of such improvement be assessed upon the property within the drainage district thus to be established.    Upon presentation of the petition, the board of supervisors, having found the petition to be in form, and signed by more than one hundred electors, ordered the

county auditor to appoint an engineer to examine the proposed drainage district and report. Before the petition was finally acted upon, a large number of the legal voters of the county united in presenting to the board of supervisors a remonstrance against the proposed improvement. The engineer appointed by the auditor made his report about September 25, 1897, after which the auditor caused notice of the proceeding to be served upon the property owners affected thereby. On and prior to November 8, 1897, certain claims for damages by reason of the proposed drainage were filed with the county auditor, and appraisers were appointed to assess the same, and reported their findings. At the June session, 1898, of the board of supervisors, the petitioners, having filed a bond for the payment of all damages assessed, moved the board for an order establishing the drainage district, which motion being overruled, testimony was offered and received both in support and in resistance of the petition. On June 18, 1898, the supervisors made their findings that the proposed ditch would not promote the public health or welfare, that the improvement was opposed by a large majority of the land owners along the route, and therefore ordered the prayer of the petition be denied. From this order the petitioners appealed to the district court, and upon the record as returned by the county auditor moved said court to order the location and establishment of the drainage district, which motion was overruled, and error is assigned upon such ruling. The case was then tried to court upon its merits, a large mass of testimony being taken, and preserved by proper bill of exceptions. At the conclusion of the trial the court found against the petitioners "that some slight benefit would accrue to the general public from the ditch if constructed as proposed, yet that no substantial benefit would accrue to the general public therefrom; that the proposed ditch would not in any material sense be conducive to public health;" and upon such finding affirmed

the order of the board of supervisors, and taxed the costs to the petitioners. From this decision and judgment the petitioners appeal. The record in this case is so exceedingly voluminous that we are not justified in attempting to make any statement of it in detail. The appellants having presented nearly 200 assignments of error, the limts of time and space available for their consideration make it necessary that we refer specifically only to the leading propositions, whose decision will necessarily govern the disposition of minor questions.

I. Appellants contend that their motion for an order establishing a drain, first made before the board of supervisors and afterwards renewed in the district court, should have been sustained. To a proper understanding of the question thus presented it is essential that we examine the statute under which this claim is asserted.

The proceedings were instituted under the provisions of title 10, chapter 2, of the Code. Section 1952 of that chapter is as follows: "When the petition of one hundred voters of the county setting forth that any body or district of land in said county  *  *  * is subject to overflow, or too wet for cultivation, and the public health, convenience and welfare will be promoted by draining and ditching or leveeing the same or changing a water course,    *    *    * shall be filed with the county auditor, he shall appoint an engineer, who shall proceed to examine the lands described and may survey and locate such improvement as may be necessary for the reclamation of such lands or any part thereof and for the public health, convenience or welfare, and shall make substantially the same report and the same proceedings shall be had as provided by law for the construction of ditches, drains and changes in water courses." The method of procedure after the report of the engineer may be briefly stated as follows: The auditor is required to cause proper notice to be served upon the owners of land affected by the proposed improvements. Code, section

1940. At the time named in the notice the supervisors are to assemble to hear and determine the petition, and, if they find the petition properly sustained, and no claims for damages are filed, order the location and construction of the work; but, if claims for damages are filed, further proceedings are to be adjourned for the appraisement and assessment of damages, which being done the board is required, at the next regular session after such damages have been assessed and paid or secured, to proceed to locate and establish the improvement. Code, section 1941. The right of appeal to the district court is preserved to all parties in interest from the order locating and establishing the improveme 1 or refusing so to do. Code, section 1947. It will be observed that the essential facts which must be alleged and established before the improvement can be ordered are: First, that the body or district of land is subject to overflow, or is too wet for cultivation; and, second, that the public health, convenience, or welfare will be promoted by the proposed work. The duty of hearing and determining these questions is committed in the first instance to the board of supervisors, and, until the truth of both of the above propositions has been established to the satisfaction of such board, the order for the location and construction of the improvement cannot rightfully be made. This we do not understand to be disputed by the appellants, but they argue that, while the record does not affirmatively show that the board of supervisors, at its first meeting after the report of the engineer, found the allegations of the petition for the drain to be true, yet the court should presume that such finding was made. The theory of this contention is that the statute (section 1941) does not provide for the appraisement of damages until after the board has found the proposed improvement con lucive to the public health, convenience, and welfare, and, while there is no record of such finding, yet, as it does appear that the board ordered the appointment of appraisers, it

must be assumed that it had found the necessary facts which called for such appointment. We cannot accept this view of the law. In the first place, while not disposed to hold boards of supervisors and other tribunals of that nature to great nicety of record or procedure, the essential, fundamental, and jurisdictional propositions must rest upon something more substantial than mere inference or presumption. The statute upon which reliance is placed is not altogether clear in its requirements. The language is (section 1941): "The board at the first session set for hearing said petition shall thereupon proceed to hear and determine, and if they find such improvement conducive to public health, convenience or welfare, and no claims have been made for damages, they shall locate and establish the same. * * * But if any such claim has been made further proceedings shall be adjourned to the next regular session, and the county auditor shall forthwith appoint appraisers to assess such damages." While, perhaps, it is reasonably apparent that the idea of the statute is that there need be no appraisement for damages until the board has found in favor of the petitioners, yet it is not a violent rendering of the language to interpret it as meaning that if, upon taking up the petition, claims for damages are found to have been filed, the hearing shall be continued for final order until an appraisement has been made. Such, indeed, appears to have been the interpretation adopted by the board of supervisors, for the record of the proceedings transmitted upon appeal to the district court, after citing the presentation of the petition and the appointment and report of the engineer, states as follows: "The land owners were served with notice that the petition would come up for hearing on the 8th day of November, 1897. And on said day it was taken up, and found there were a great many claims filed for damages; wherefore the board of supervisors ordered the county auditor to appoint three appraisers," etc. Further consideration was

then postponed to the next regular session, and not until all claims for damages were in was there any decision upon the merits of the petition, and the decision when made was adverse to the petitioners. In taking this course the board followed the somewhat analogous practice in road cases, where no final hearing is had until after claims for damages have been filed and appraisement made. Code, title 8, chapter 1. We do not think it necessary to decide whether this practice is the correct one as applied to the case before us. Even if the proper order or sequence of the several steps in the proceedings was not followed, it remains apparent that not only did the supervisors fail to find the facts without which the order for the drain could not be made, but they did find that such facts were not established. There was, therefore, no error in the ruling denying the appellant's motion for judgment.

II. Aside from a brief discussion of the question disposed of in the preceding paragraph, the 601 pages of printed arguments with which counsel have favored the court are devoted almost exclusively to the rulings of the court upon offers of evidence and to the weight and effect of the evidence as a whole. It would be an endless task to deal with all the questions thus raised. It will be sufficient to say that, while some of the rulings were erroneous, the testimony admitted or excluded does not appear to have been of such character that the errors should be deemed prejudicial. The taking of testimony appears to have occupied the court for at least ten days, and was largely of an·expert character, ranging exhaustively the fields of hydrostatics, hydraulics, engineering, medicine, bacteriology, agricultural chemistry, and scientific conjecture, interspersed with occasional excursions into the realm of facts. Many of the hypothetical questions propounded to witnesses are of great length and labyrinthian constructoin, the obscurity of which is equaled only by the profound darkness shed by the answers thereto. It would

require a judicial Solomon to thread his way through a trial of this kind and avoid all error; but where the errors are such that, in view of the entire record, we can fairly say no actual prejudice resulted to the appellant, a reversal should not be ordered thereon. Moreover, this is one of those peculiar special proceedings provided for by statute in which it is difficult, if not impossible, to apply and enforce rules of evidence with the strictness which is proper in ordinary proceedings. The trials are to the court, which is skilled in sifting the grain from the chaff; and we think it the universal, and by no means reprehensible, practice to exercise a broad liberality in the admission of evidence in such cases. We find no reversible error in the rulings upon the introduction of evidence. As to the sufficiency of the testimony to sustain the finding, the record is not such as to justify our interference with the judgment below. This is a proceeding at law, and the finding of the trial court has the effect of the verdict of a jury. There is, to say the least, some evidence to sustain it, and we are bound thereby.

III. Complaint is made of the ruling of the district court upon the question of costs. It is said that in this proceeding there are no plaintiffs and no defendants, and therefore no one against whom a judgment for costs can be rendered. The suggestion is further made that, as the statute (section 1940) requires the petitioners to give a bond conditioned to pay all costs and expenses incurred in case the board of supervisors refuse to grant the prayer of the petition, the parties entitled to fees and costs must look to the bond therefor. It is true there are no plaintiffs or defendants in this proceeding, but, anomalous as it may appear, there are nevertheless parties. One party is in the court asking an order which affects the property of another party, who appears and resists the application. The statute provides, as we have seen, for an appeal to and trial in the district court. When the appeal

is perfected, the matter becomes a proceeding in the district court as fully as if the statute had provided for its origination in that court; and we see no sufficient reason why, with all other actions and proceedings of an adversary nature, it does not come within the general rule that "costs shall be recovered by the successful against the losing party." Code, section 3853. The fact that a bond is required of the petitioners at the outset we do not think a controlling circumstance. When a nonresident wishes to maintain an ordinary action, and is required to give a bond, it in no manner affects the taxation of costs against him. The bond in either case secures the costs, but it does not relieve the losing party from the liability to have them taxed against him. It is also said the court erred in entering judgment against the sureties on the bond.

The record does not disclose who the sureties are, nor that they have appealed from the judgment, and it is therefore unnecessary for us to decide this question. If the court had jurisdiction to enter such judgment, then the failure of the sureties to appeal prevents our passing upon the alleged error, and, if the court had no jurisdiction, then the judgment against such sureties is void, and of no effect.

We think it proper, in disposing of this case, to make some reference to the exceedingly burdensome record presented. It includes:

| | | |
|---|---|---|
| (1) Appellant's abstract | 416 | pages |
| (2) Supplement to abstract | 25 | " |
| (3) Appellee's amended abstract | 172 | " |
| (4) Appellee's second amended abstract | 9 | " |
| (5) Appellee's third amended abstract | 124 | " |
| (6) Appellee's fourth amended abstract | 167 | " |
| (7) Appellant's reply to amended abstract | 36 | " |
| (8) Appellant's argument | 243 | " |
| (9) Appellee's argument | 275 | " |
| (10) Appellant's reply | 82 | " |
| Making a total of | 1,549 | " |

This has been accomplished to a great extent by setting out with unnecessary and tedious literalness the testimony of the witnesses, much of it being given in full, question and answer; and then, notwithstanding the apparent anxious solicitude of both parties to let nothing escape from the numerous abstracts and amended abstracts, a very large portion of the same testimony is repeated and embodied, question and answer, in the arguments of counsel.  The original assignments of error number 132, many of which are divided into paragraphs, and these paragraphs again subdivided into minor paragraphs, each presenting an alleged error.  We then have a further assignment, said to have been "omitted by oversight," numbering from A to P, inclusive.  The industry and faithfulness of counsel in presenting the cause of their clients is to be commended, but it should not be forgotten the time of the court is limited, and only so much of the record of a case should be presented as is necessary to make clear the proposition upon which reliance is placed.  More than that tends to obscurity and the embarrassment of the court.  We do not overlook the fact that some cases are tedious at best, and this is doubtless one of them; yet we are fully persuaded that it could have been adequately presented, and with more clearness, in not to exceed 500 printed pages.  We feel the more at liberty to make these suggestions from the fact that counsel in this case are gentlemen deservedly eminent and respected in the profession, and will readily understand, and we doubt not will admit the justice of a criticism which is not intended in the nature of rebuke or censure, but as a timely hint to the bar in general to avoid, as far as possible, the unnecessary enlargement of records submitted upon appeals to this court.  The costs of printing 250 pages of amended abstracts and argument will be taxed to appellees.  All other costs of the appeal will be taxed to appellants.  The judgment of the district court is AFFIRMED.