## IN RE. ORGANIZATION OF BENCH CANAL DRAINAGE DISTRICT.

### MULLEN, ET AL. V. HART, ET AL.

(No. 839; Decided April 17th, 1916; 156 Pac. 610.)

CONSTITUTIONAL LAW—DRAINAGE DISTRICTS—DUE PROCESS OF LAW—NOTICE—ADJUDICATIONS OF QUESTIONS INVOLVED—DRAINS—DRAINAGE BENEFITS — EMINENT DOMAIN — COMPENSATORY BENEFITS — STATUTES— FINDINGS— UNIFORM OPERATION OF LAWS— ACTION— PROCEEDINGS.

1. Where the findings are sufficiently supported by other evidence, error assigned in the admission of testimony of an absent witness given at a former hearing in the same proceeding will be disregarded.

2. The preliminary report of commissioners appointed in connection with the organization of a drainage district pursuant to Laws 1911, Chapter 95, having been made and confirmed by the court on hearing, of which all parties interested had notice and opportunity to be heard, which definitely determined and adjudged in detail the work to be done, fixed the starting points, routes and termini of drains and ditches, with maps, plans and specifications showing the kind and amount of work to be done and the amount and benefits to each contract, the making of further assessments without notice pursuant to Section 74 of the act is not in contravention of Art. 1, Section 6, of the State Constitution, declaring that no person shall be deprived of life, liberty or property without due process of law, when the total assessments are less than the adjudged benefits.

3. The provisions of the drainage district act, Laws 1911, Chapter 95, Section 74, authorizing additional assessments proportioned on the last assessment of benefits approved by the court to be made by the commission by order of court without notice for the purpose of completing construction or paying interest on lawful indebtedness of the district, are not in contravention of Art. 1, Section 32, of the State Constitution, providing that private property shall not be taken for private use unless by the consent of the owner, except for private ways of necessity, drains, flumes, etc., nor in any case without due compensation, or Section 33, providing that private property shall not be taken or damaged for public or private use without just compensation, in view of other provisions of the act for an adjudication upon notice after full hearing of the amount, nature, benefits and detail plans of drainage construction.

4. Laws of 1911, Chapter 95, does not contravene Const., Art. 1, Section 34, declaring that all laws of a general nature shall have a uniform operation, as the parties are not in the same position, in that those brought in after the report of the commissioners therein provided for, or after the system has been completed, have had no opportunity to be heard on questions relating to the extent and cost of the system.

5. The trial of the issues raised by the remonstrators in a proceeding to establish a drainage district and assess the benefits, etc., under Laws 1911, Chapter 95, making no provision for costs, is an "action" within Comp. Stats. 1910, Section 4647, providing that in other actions the court may

award and tax costs, and apportion them between the par-
ties as may be adjudged to be right and equitable, so that,
where the court found that the remonstrators had no just
ground to object to the confirmation of the report of the
commissioners, there was nothing unjust in requiring them
to pay the costs.

Error to the District Court, Big Horn County; Hon.
Charles E. Winter, Judge.

Proceedings had upon objections filed with the confirmation
of the report of commissioners made in connection with the
organization of the Bench Canal District following an order
confirming the report, Iowa M. Mullen and other remon-
strators bring error. The nature of the proceedings and
other material facts are set forth in the opinion.

*E. E. Enterline* and *Thomas M. Hyde,* for plaintiff in
error

Chapter 95, Laws 1911, is unconstitutional. Even assum-
ing that the entire cost of construction cannot exceed the
assessment for benefits, additional assessments for cost of
construction may be made by commissioners with the ap-
proval of the court without notice to the land owner affected
thereby, and may be collected as the original assessments.
(See Section 74.) Assessments are made a lien upon the
land. (Section 64.) Five assessments are provided for;
first, damages to land; second, all benefits to land; third,
cost of construction; fourth, unequal benefits to land; fifth,
special benefits to corporation. These assessments are all
made by the court without a jury and directed to be paid in
not more than fifteen installments. There is no restriction
as to the amount of assessments or benefits and apparently
cost of construction may exceed the assessment of benefits.
The objectionable feature is that additional assessments for
the cost of construction, where the first assessment is too
small, may be made without notice, a provision in conflict
with our Constitution. (Const. of Wyo., Art. 1, Secs. 6 and
32; Argyle, et al. v. Johnson, 118 Pac. 487; Sterritt v.
Young, 14 Wyo. 159, 82 Pac. 946; Stuart v. Palmer, 74 N.

Y. 183, 30 A. R. 289.) The case of Sterritt v. Young condemned the placing of the burden upon land without giving the owner the right to be heard. Stuart v. Palmer is there cited as a leading case upon the subject. The facts involved in the New York case are analagous. The case of Stone v. Little Yellow Irrigation District (Wis.) 95 N. W. 405, was relied upon below in defense of the law and of the contention made that there is no occasion to have any further hearing after the first hearing. The Wisconsin act was not set forth in the opinion, but it is difficult to observe any distinction between the first assessment for construction and subsequent assessments to complete construction. The provisions of Section 74 authorizing other assessments without notice so permeate the entire act as to render it unconstitutional. The iniquity of this section was recognized by the legislature of 1915, which by amendment provided for notice, but the amendment cannot have a retroactive effect. Eight of the remonstrators did not petition for the organization of the district, but were brought in and their lands were included in the commissioner's report; being so brought in they were obliged to submit questions raised in their remonstrance to the court without a jury. Lands outside receiving benefits may be brought in on notice, but if they remonstrate they have a right of trial by jury upon assessment of benefits made by commissioners. (Sections 85 to 91.) The owners of land within the district are required to submit objections to the court without the intervention of the jury. (Sections 76 and 77.) Owners brought in by the commissioners must submit their objections to the court, but unless brought in after the formation of the district, may have the same objections tried by a jury. This is obnoxious to the uniform operation clause of the Constitution. (Art. 1, Section 34; State v. Bargus, 53 O. S. 94, 53 A. S. 628; State v. Ellet, 47 O. S. 90, 21 A. S. 772.) Lands of plaintiffs in error naturally drain in opposite direction or into Dry Creek and are not benefited by the system and cannot be legally assessed. (Beals v. James (Mass.) 54 N.

E. 245; Blue v. Wentz (Ohio) 43 N. E. 493.) The value of our lands will not be enhanced by the system. The evidence offered as to public welfare and public health is unworthy of consideration. Judge Tidball at the first hearing fixed the value of lands with reference to their value before and after the installation of the system, but Judge Winter later disregarded this rule and apparently established an arbitrary valuation upon which to base assessment which was supported by evidence. It was error to admit the testimony of the absent witness Kelley given at a former hearing, but on different issues arising in the proceeding; the finding that $3,000.00 had been properly expended in the establishment of the district was erroneous and not supported by the evidence. It was error to tax the costs to remonstrators as there is no statutory authority therefor.

*Raymond B. West* and *E. E. Lonabaugh,* for the Drainage District.

If there is any merit in the objections raised to Section 74 of the act, it is cured by the amendment of March 5th, 1915. The constitutional question referred to is a moot question, as the sections objected to have no bearing upon this appeal; the proceedings have not advanced to a point involving the sections complained of and the question of their validity is unnecessary to the disposition of this case. (8 Cyc. 798; 6 R. C. L. 76; Platte Land Co. v. Hubbard .(Colo.) 69 Pac. 514; Hart v. Smith, 64 N. E. 661; Dubuque, &c. R. R. Co. v. Diehl, 21 N. W. 117; State v. Curler (Nev.) 67 Pac. 1075.) The cases cited in support of criticisms of Section 74 are not in point as will be observed from an examination of the facts involved in those cases. Due process of law does not require a land owner to a hearing at every stage of the procedure. (Re. Bond of Irrigation District (Cal.) 14 L. R. A. 755; Oliver v. Monona (Iowa) 90 N. W. 510; Dodge County v. Acum (Neb.) 85 N. W. 292.) Section 74 is adopted from Wisconsin and its counterpart was construed in Stone v. Irrigation District, supra. The Wisconsin construction is binding. (Crumine

v. Reynolds, 13 Wyo. 111, 78 Pac. 402.) The provision is constitutional. (Meggett v. Eau Claire, 81 Wis. 332, 51 N. W. 566; People v. Chapman, 127 Ill. 387, 19 N. E. 872.) If additional assessments are levied notice is to be served as required by Chapter 155, Laws 1915. Laws applying to distinct classes alike do not conflict with the uniform operation clause of the Constitution. (Edmonds v. Herbrandsom, 50 N. W. 970, 14 L. R. A. 725; State v. Ellet, cited by remonstrators and note; Ladd v. Holms, 66 Pac. 714; State v. Woodman, 67 Pac. 1118; State v. Schlitz (Tenn.) 71 Am. St. Rep. 941.) The organization of a drainage district is a special proceeding and a jury trial may not be demanded as a matter of right. (M. E. Church v. Erie, 24 Cyc. 128; Warren v. France, 3 Wyo. 273; Light v. Canadian Co. Bank, 37 Pac. 1075; First National Bank of Rock Springs, 9 Wyo. 172.) Being a special proceeding the legislature may provide a jury for one class and withhold it from another. (State v. Ellet, supra; State v. Terre Haute, 14 L. R. A. 566.) The methods followed in assessing benefits were fair and in accordance with the statute. (Chapter 95, Laws 1911.) A finding on conflicting evidence will not be disturbed. (Samuel v. Thomas, 149 Pac. 395.) The evidence given by Kelley at a former hearing was properly admitted. (Jones on Evi., Sec. 683.) The finding that $3,000.00 was expended in the organiation of the district is supported by evidence and authorized by statute. (Laws 1911, Section 63.) It was proper to assess the costs against the remonstrators. Section 4647, Comp. Stats. 1910, governs proceedings of this character.

BEARD, JUSTICE.

The Bench Canal Drainage District is a Drainage District organized for the purpose of draining certain lands in Big Horn county, under the provisions of Chapter 95, S. L. 1911, entitled, "An Act for the formation and organization of drainage districts, and conferring certain powers thereon." The organization of the district appears to have been proceeded with under the provisions of said chapter, the

preliminary report of the commissioners provided for by Section 27 of said chapter made and approved in accordance with Section 34. The journal entries prior to May 16, .1914, have not been brought up, but it appears by an order of that date that the report of the commissioners provided for in sections 39 to 51, inclusive, had theretofore been filed, that remonstrances against the approval of the report had been made, a hearing had and a decision rendered that day, as of the date of May 19, 1913, by which order the report of the commissioners was disapproved and the report referred back to the commissioners for modification and amendment. That on September 2, 1914, the commissioners filed an amended and supplemental report, to which the plaintiffs in error, Iowa M. Mullen, J. O. Neff, Charles Meyers, Rose M. Newcomer, D. A. Redmon, Charles Olson, William Hodson, William Peper, John Wamhoff, Herman Ahlgrim, Christian Jensen, H. G. Stearns and H. C. Teyler (and others not appealing) filed their remonstrances against the approval of said report. (The above named Christian Jensen, one of the plaintiffs in error, does not appear to have been one of the remonstrators.) The matter came on for hearing and was heard December 1, 2 and 3, 1915, and was by the court taken under advisement; and on February 20, 1915, an order was entered confirming said report, and overruling and dismissing the objections and remonstrances of the remonstrators, and rendering judgment against them for costs. From that order the above named remonstrators bring the matter here on error.

The objections of plaintiffs in error to the approval and confirmation of said report, as contained in the remonstrance, are, in substance, that their lands were included within the district by said report; that neither said Neff, Mullen, Redmon, Olson, Hodson, Ahlgrim or Stearns were signers to the petition for the organization of said district, but that their lands were brought into said district by said commissioners, and that each and all of the tracts belonging to said last mentioned remonstrators were dry lands and

would not be drained or in any manner benefited by the construction of the drainage system proposed, or by any other that could be constructed. That only a small area of the land included in said district was wet and boggy, and could be properly and fully drained by open ditches at a much less cost than that estimated by the commissioners by the plan proposed, which was excessive and unjustifiable. That the public health or welfare would in no manner be promoted by the drainage of said lands or any of them or by the inclusion of the same in said drainage district. That Chapter 95, S. L. 1911, is unconstitutional and void for the following reasons:

1. That by its provisions and especially under Sec. 74 thereof, the remonstrators are, and each of them can be deprived of their property without due process of law.

2. That their private property can be and is sought to be taken for private use without consent of the owner and without due compensation.

3. That their private property can be and is sought to be taken for private use without just compensation.

4. That these remonstrators who are brought into and whose lands are included in such drainage district are compelled to submit any objections they may have to having their lands assessed in such drainage district to the Court or Judge, while other persons subsequently brought in have a right to have such issue determined by a jury.

In order to fairly and, if we can, clearly present the questions raised, it will be necessary to refer at some length to the statute and to quote the sections particularly involved. The organization of a drainage district is initiated by a petition, filed in the district court, signed by a majority of the adult owners of land within the district representing one-third in area of the lands in said district to be reclaimed or benefited, or by the adult owners of more than one-half of the lands in said district, stating their desire to construct drains, ditches or levees across the lands of others, for the promotion of the public health or welfare, and the drain-

age of said lands, which petition shall set forth: 1. The proposed name of said district.  2. The necessity of the proposed work, describing the necessity.  3. A general description of the proposed starting points, routes and termini of the proposed drains, ditches or levees.  4. A general description of the lands proposed to be included in said district.  5. The names of the owners of all lands in said district when known; and praying for the organization of such district and for the appointment of commissioners for the execution of the work.  On the filing of such petition the court is required to fix the time and place for a hearing on said petition, and ordering notice to be given.  On the day fixed for hearing on such petition all parties owning lands, or any interest or easement in land, within the proposed district, or who would be affected thereby, may appear and contest:  (1) The sufficiency of the petition,  (2) The sufficiency of the signers to the petition,  (3) The sufficiency of the notice,  (4) The constitutionality of the law and  (5) The jurisidiction of the court.  The court shall hear and determine whether or not the petition complies with the requirements of the statute, and shall determine all questions of law arising on any contest; and if the petition is found to so comply, it shall appoint three commissioners, who are required to personally examine the lands in said district and make a preliminary report to the court, which report shall state:  1. Whether said proposed work is necessary, or would be of utility in carrying out the purposes of the petition.  2. Whether it would promote the public health.  3. Whether it would promote the public welfare.  4. Whether the total benefits from said proposed work will exceed the cost thereof together with the damages resulting therefrom.  And 5. Fix as near as may be the boundaries of said district.  The commissioners are authorized to change the boundaries of the district from those described in the petition, and to include other lands they deem benefited; and also to change the plan of drainage.  Upon the filing of this preliminary report the court or judge shall fix a time and place

of hearing, of which notice is required to be given to all parties including the owners of any lands added to the district by the commissioners in said report. At the time fixed in the notice any interested party may appear and remonstrate against said report or any material part thereof. All issues arising upon said preliminary report shall be tried by the court without a jury. If the preliminary report be that the benefits of the work will exceed the damages and costs of construction, and that the public health or welfare will be promoted thereby, and no remonstrance thereto is filed, or if on the trial of the issues made upon the report, the court so finds, it shall make an order confirming the report, or direct amendments thereto to conform to the court's finding, and when so amended the report shall be confirmed and the commissioners directed to proceed with the work. Such findings and order shall be final and conclusive unless appealed from to the Supreme Court within thirty days after filing thereof; and upon the entering of such order of confirmation of said preliminary report of record, such drainage district shall be deemed organized and a body corporate. The foregoing is a summary of the provisions for the proceedings up to and including the organization of the district as provided for in Sections 1 to 38 inclusive of said Chapter 95, and have been referred to in order to show what questions are settled up to that time. It is then provided as follows:

"Sec. 39. As soon as may be after the confirmation of the said preliminary report, or within such time as the court may direct, said commissioners shall proceed to have all necessary levels taken and surveys made, and shall lay out said proposed work, make a map thereof and plans, profiles and other specifications thereof, and report in writing to the court.

"Sec. 40. First: Whether the starting point, routes and termini of the proposed work and the proposed location thereof, as in the petition contained, are in all respects proper and feasible, and, if not, shall report such as are most proper and feasible.

"Sec. 41.   Second: If it be found necessary to change the boundaries of said proposed district, as by them previously fixed, they shall report said proposed change, and, if possible, shall report the names, residence and postoffice addresses of the owner or owners of all lands affected by said change in boundaries, but no such change in boundaries shall be made as to deprive the court of jurisdiction; provided, however, that if the owners of lands adjacent to the district petition to have their lands brought in to the district such may be considered the same as original petitioners in making changes of boundaries.

"Sec. 42: Third: What lands within the district, as by them reported will be injured by the proposed work, if any, and they shall therein award to each tract, lot, easement or interest by whomsoever held, the amount of damages which they shall determine will be caused to the same by the proposed work.

"Sec. 43.   Fourth: What lands within the district as by them reported will be benefited by the proposed work and they shall assess against each tract, lot and easement by whomsoever held the amount of benefits which they determine will be caused to the same by the proposed work. The benefits so assessed are herein referred to as 'assessment of benefits.'

"Sec. 44.   Fifth: They shall also determine and report to the court the total amount, as near as they can determine, that said proposed work will cost, which cost shall include all incidental expenses, the reasonable cost of organizing said district, the costs of proceeding and all probable damage to lands, both within and without the district, together with a reasonable attorney fee for the petitioners, which cost will hereinafter be referred to as 'cost of construction.'

"Sec. 45.   If the cost of construction of any particular part of the work so proposed to be done should be assessed upon any particular tract or tracts, lot or lots of land, or upon any corporation or corporations, the commissioners shall so specify, and in their report they shall fix and deter-

mine the sums which should be assessed against said tracts, lots and corporations, and assess such sum against said tracts, lots and corporations.

"Sec. 46. And if any corporation would, in the judgment of said commissioners, derive special benefits from the whole or any part of such proposed work, the commissioners shall so report and assess those benefits and assess against the same its proportionate share of the costs of said proposed work. The word 'corporation' wherever in this act contained, shall be construed to include: (1) Railroad companies. (2) Other private corporations of all kinds. (3) Towns. (4) Cities. (5) Villages; and (6) Other drainage districts.

"Sec. 47. They shall apportion and assess the part of this 'cost of construction,' not assessed as above, against the several benefited tracts, lots and easements in said drainage district, in proportion to the benefits which they have assessed against the same, by setting down opposite each tract, lot or easement, the sum which they assess against the same for construction. The assessments which together make up the cost of construction, as above defined, are herein referred to as 'assessments for construction.'

"Sec. 48. Sixth: The commissioners shall further report to the court the probable cost of keeping said proposed work in repair after it is completed.

"Sec. 49. Seventh: They shall include in their said report, said map, plans and other specifications, and file the same with their report.

"Sec. 50. The commissioners shall not be confined to the points of commencement, routes or termini of the drains or ditches, or the number, extent or size of the same, or the location, plan or extent of any levee, ditch or other work, as proposed by the petitioners, but shall locate, design, lay out and plan the same in such manner as to them shall seem best, to promote the public health or welfare, and to drain, or to protect the lands of the parties interested with the least damage and the greatest benefit to all lands affected

thereby. And any plan proposed by the commissioners, may, on the application of any person interested, on the hearing hereinafter provided for, or on the application of the commissioners, be altered by the court, by written order, in such manner as shall appear to the court to be just.

"Sec. 51. If the commissioners find that the proposed district, as described in the petition filed, will not embrace all of the lands that will be benefited by the proposed work, or that it will include lands that will not be benefited and are not necessary to be included in said district for any purpose, .they shall extend or contract the boundaries of the proposed district so as to include or exclude all such lands, as the case may be; and the boundaries adopted and reported by them, may, upon the hearing of their report, as hereinafter provided, upon their application, or that of any person interested, be altered by the court in such manner as shall appear to be just; provided, that the alteration of boundaries as aforesaid shall not have the effect of so far enlarging or contracting the proposed district as to render such petition void or dismissable. Said report shall be filed with the clerk of the court."

Section 52 provides, upon filing of said report the court shall make an order fixing the time and place when and where all persons interested may appear and remonstrate against the confirmation of the report; and requiring notice of the time and place of such hearing. Sections 53, 54 and 55 provide the manner of service of such notice. Section 56 provides, if the court finds that the report requires modification it may be referred back to the commissioners for that purpose.

"Sec. 57. If there be no remonstrance, or if the finding be in favor of the validity of the proceedings, or after the report shall have been modified to conform to the findings, the court shall confirm the report and the order of confirmation shall be final and conclusive, the proposed work shall be established and authorized, and the proposed assessments approved and confirmed, unless within thirty days an appeal

be taken to the Supreme Court, the said order of confirmation shall also fix the commissioners' bond."

Section 63 provides for payment of assessments in installments; and Section 64 makes assessments a lien on the land.

"Sec. 74. If in the first assessment for construction the commissioners shall have reported to the court a smaller sum than is needed to complete the work of construction, or if in any year an additional sum is necessary to pay the interest on lawful indebtedness of said drainage district, further or additional assessments on the land and corporations benefited, proportioned on the last assessment of benefits which has been approved by the court, shall be made by the commissioners of said drainage district under the order of the court or presiding judge thereof without notice, which further or additional assessment may be made payable in installments as specified in Section 63 hereof, and shall be treated and collected in the same manner as the original assessments for construction confirmed by the court, in said drainage district."

The last quoted section was amended by an act approved March 5, 1915, by which the words "without notice" were omitted and "Notice of hearing of the application for such additional assessment shall be published at least once each week for three consecutive weeks in one newspaper published in each county in which said lands, or any part thereof, within said district are situated," is inserted at that place in the section.

"Sec. 85. Whenever any drained lands outside a drainage district are receiving the benefits of the drains of said district, by direct or indirect, natural or artificial connection therewith, the commissioners of said district may report said facts to the court and ask that said lands, describing them, be brought into said district and assessed for the benefits by them received from the drains, ditches or levees of said district.

"Sec. 86. Upon the filing of said report the court shall order the owners of such lands to be notified of the filing

of said report and the contents thereof, and shall require such owners to show cause at a time and place therein fixed, not less than twenty days thereafter, why their said lands should not be brought into said district and assessed for said benefits.

"Sec. 87. At the time and place fixed for hearing said report any of said land owners may appear and remonstrate against the confirmation of said report. All remonstrances shall be in writing, verified and shall set forth the facts on which they are based. All issues arising on said report shall be tried by the court without a jury.

"Sec. 88. If the court shall find that said lands or any of them are receiving the benefits of any such drain, ditch or levee, the court shall so find in writing and shall order said lands to be annexed to and made a part of said district, and benefits to be assessed against the same by the commissioners of said district.

"Sec. 89. Said order shall be final and conclusive unless appealed from (to) the Supreme Court within thirty days from the date of entry thereof." (The word "to" above inclosed in brackets is not in the printed Session Laws but is in the enrolled act.)

"Sec. 90. Said commissioners shall, after the time for appeal is past, assess against each parcel, tract and easement of and in said annexed lands reasonable and just benefits, and shall assess against said lands for construction and repairs such sum as shall be just. If lands similarly situated and benefited are found in said district the annexed lands shall be assessed a like sum of benefits and damages as said lands in the said district to which they are sought to be annexed, and a sum for construction of said work which shall be equal to all sums assessed for the complete construction of the drainage system in the district to which they are sought to be annexed against lands having the same assessment of benefits in said district.

"Sec. 91. The commissioners shall file their said report and assessments in court. The court shall by order require

said owners to show cause at a time and place therein fixed, not less than twenty days after the service of said order, why said report and assessments should not be confirmed. And on the hearing on said order to show cause if a jury trial is demanded the court shall frame issues on benefits and damages and impanel a jury or adjourn the hearing thereon until some term of court when a jury is in attendance and take the verdict of a jury on such issues. All other issues arising on said report shall be tried by the court. The court shall order all necessary amendments of said report and make written findings of fact and when said report is amended shall by order confirm the same."

Neither the petition for the organization of said district, nor the preliminary report of the commissioners has been brought up, and we assume, as it is not controverted, that the preliminary report was made and duly approved, and that it was finally and conclusively determined on the hearing on said report that the proposed work was necessary or would be of utility in carrying out the purposes of the petition; that the proposed work would promote the public health, or the public welfare; that the total benefits of the work would exceed the costs thereof together with the damages resulting therefrom.

It is from the order of the court confirming the report, as modified and amended, provided for by Sections 38 to 51 inclusive, that this proceeding is brought; and upon the issues presented by the remonstrance the court found against the remonstrators; the finding being as follows: "The court finds that the establishment of said drainage system will materially benefit the land of all the land owners within the boundaries of the same and will make such lands more valuable in the general market; that the removal of the boggy and seeped areas by the proposed drainage system will relieve the said lands of a burden; that the public health and public welfare will be promoted by the establishment of said drainage system and that the establishment of said drainage system will increase the value of all the lands within

said drainage district. The court further finds that the objections and remonstrances of each and all remonstrators herein named should be overruled and dismissed and that the original and supplemental reports, except in so far as the same have been heretofore modified by the court and also the amended report of the said commissioners of the said The Bench Canal Drainage District, should be in all things approved and confirmed." An order was entered accordingly. While there is a conflict in the evidence as to whether or not the lands of the remonstrators would be benefited by the establishment of the system, we are satisfied that there is sufficient evidence to support the findings of the district court and that we should not disturb these findings. It is contended that the court erred in admitting in evidence the testimony of an engineer who had testified on a former hearing and was absent at the time of the hearing of the issues here in question. But if that evidence be excluded we are of the opinion that the findings are sufficiently supported by the other evidence before the court. Therefore, if the statute does not violate constitutional provisions, the judgment should be affirmed.

It is earnestly contended by the plaintiffs in error that Section 74 does so because after the first assessment for construction has been made and approved, additional assessments, if necessary to complete the work, may be made without notice, and thus their property may be taken without an opportunity to be heard and without due process of law. We do not think that contention is tenable. The report which the statute requires and which was made and confirmed by the court, and on the hearing of which all parties interested had notice and opportunity to be heard, definitely determined and fixed in detail the work to be done; fixed the starting points, routes and termini of the drains and ditches, with maps, plans and specifications for each; and on such hearing any interested person had an opportunity to be heard as to the best, cheapest and most feasible system which should be adopted; and the court is not confined to

the plans proposed by the commissioners, but may on such hearing alter the same in such manner as shall appear to be just. Upon that hearing the kind and amount of work to be done is definitely determined and fixed, and each tract benefited is to bear its proportionate part of the cost thereof. The amount of benefits to each tract is also determined at such hearing, but the exact cost of construction is not determined. But if the first estimate and assessment should prove insufficient to complete the work we see no reason why other assessments should not be made without notice so long as the total assessments are less than the adjudged benefits. All parties have had their day in court on the questions of whether or not a drainage district should be established; what system should be adopted; the points of commencement, routes and termini of the drains, ditches or levees; the plans and specifications of the work to be done; the amount each tract will be benefited and the proportionate amount of the cost of construction each tract shall bear. Having been given the right to be heard on those questions, and it being determined that the work shall be done, what difference can it make whether the cost is assessed at one time or several times? And what objection could be urged against subsequent assessments, if the first was insufficient to complete the work, that could not and should not have been presented and determined on the hearing? We confess we can see none so long as the total assessments are less than the benefits. The case of Sterritt v. Young, et al., 14 Wyo. 146, 82 Pac. 946, 4 L. R. A. (N. S.) 169, 116 Am. St. Rep. 994, is cited by counsel for plaintiffs in error as decisive of the question now being considered. But that case is not in point. In that case the statute made no provision for notice, while in the present case, as above shown, the land owner had notice and an opportunity to be heard on all questions affecting his rights. We are of the opinion that Section 74 of the act does not contravene Sec. 6, Article I of the Constitution, viz: "No person shall be deprived of life, liberty or property without due process of law." Or Sec. 32

of said Article, viz: "Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and for reservoirs, drains, flumes, or ditches on or across the lands of others for agricultural, mining, milling, domestic or sanitary purposes, nor in any case without due compensation." Or Sec. 33 of said Article, viz: "Private property shall not be taken or damaged for public or private use without just compensation." (Stone v. Little Yellow Drainage District, 118 Wis. 388, 95 N. W. 405.) However, as above stated, the section was amended in 1915, after the hearing in the district court, so as to provide for notice in case of such additional assessments, but whether that fact would affect the rights of these remonstrators need not be decided as we hold that without such amendment the statute was not unconstitutional.

It is further contended that Chapter 95, S. L. 1911, violates Section 34, Article I of the Constitution, viz: "All laws of a general nature shall have a uniform operation," in that those whose lands are included in the commissioners' report or are brought in prior to the hearing of said report are required to submit to the decision of the court without a jury trial, while those brought in thereafter are entitled to a trial by jury as provided in Sections 85 to 91 inclusive. But the parties are not in the same situation. Those brought in after the report of the commissioners has been confirmed or after the system has been completed have had no opportunity to be heard on any of the questions determined on that hearing. They have had no opportunity to be heard as to the necessity for, or the kind, character, extent or cost of the system, but are asked to contribute to the cost of a system already established in which they had no voice. The lands thus brought into the district are such as were not deemed at the time to be benefited, but are thereafter discovered to be so, and which benefits may not have accrued or have been discovered or apparent until long after the completion of the work. But the commissioners are required to assess against such land "a sum for construction

of said work which shall be equal to all sums assessed for complete construction of the drainage system in the district to which they are sought to be annexed against lands having the same assessment of benefits in said district," although they may have been receiving such benefits for a much shorter period of time. The classification in the statute is based on the different situation of the parties, is not arbitrary, and, in our opinion, does not violate the constitutional provision.

The only remaining question is that of costs. The court adjudged the costs occasioned by the trial of the issues raised by the remonstrators against them. It is claimed that there is no statutory provision for taxing costs against them in this proceeding. It is true that there is no such provision in said Chapter 95, S. L. 1911; and if authority therefor is not found in Chapter 304, Comp. Stat. 1910, they should not have been so taxed. That chapter provides for taxing costs in certain actions, and Section 4647 of the same provides, "In other actions the court may award and tax costs, and apportion them between the parties, on the same or adverse sides, as may be adjudged to be right and equitable." We are of the opinion that this case comes within the provisions of that section, and that the word "actions" as therein used applies to such adversary proceedings as those in this case. Upon the filing of a remonstrance issues are joined and a trial had as in a civil action. Under a statute of Missouri allowing a change of venue in a "Civil Suit," it was held in State ex rel. Kochtitzky v. Riley, 203 Mo. 175, 101 S. W. 567, 12 L. R. A. (N. S.) 900, that a proceeding to incorporate a drainage district and establish its boundaries is a "civil suit" within the meaning of that statute. In Bass et al. v. Elliott et al., 105 Ind 517, 5 N. E. 663, it was held that the statute providing for a change of judge in civil actions was applicable in a drainage proceeding. (See also Schmied v. Keeny, 72 Ind. 309; Folmar v. Folmar, 71 Ala. 136; In Matter of Bradley et al., 117 Ia. 472, 91 N. W. 780.) The court found that the remonstrators had no just grounds in fact or in law to object to the confirmation of the report

of the commissioners; and having by their action created costs, there was nothing unjust in requiring them to pay the same.

We have, perhaps, quoted more at length from the statute than necessary; but the case being one of considerable public interest and involving the constitutionality of the entire drainage district statute, we believed our conclusions would be the better understood by doing so.

We find no prejudicial error in the record, and therefore. the judgment is affirmed.                                    *Affirmed.*

POTTER, C. J., concurs.

SCOTT, J., being ill, did not sit, or participate in the opinion.