**CARRINGTON et al. v. SOUTHERN NEON SIGN MFG. CO. et al.**

No. 8669.

Court of Civil Appeals of Texas. San-Antonio.

Nov. 18, 1931.

Rehearing Denied Dec. 16, 1931.

J. B. Lewright and Gus B. Mauermann, both of San Antonio, for appellants.

McGown & McGown and L. B. Otey, all of Fort Worth, George Otey, of Ardmore, Okl., and Templeton, Brooks, Napier & Brown, of San Antonio, for appellees.

FLY, C. J.:

This suit was instituted by the Texas Luminous Sign Manufacturing Company, John B. Carrington, Robert F. Henry, and H. H. Ogilvie, against Southern Neon Sign Manufacturing Company, Gerald F. Mobley, Jack Cameron, C. O. Maddox, Henry Yelvington, R. S. Gardenhire, and Neal E. Beaton, to recover from them on a contract made by appellants with Glen L. Bruner, pursuant to which they lent him $10,000 in cash, being led so to do by fraud and concealment on the part of appellees. It was alleged that Bruner was the agent of the individual appellees. The cause was tried by a jury and on answers to eighty-three questions propounded to them it may be presumed the judgment is based. The judgment was for $47,833. Appellants, who were plaintiffs in the district court, have perfected the appeal to this court. The judgment gave appellants nothing on their petition, and rendered judgment for appellees on their cross-action. Appellants in their motion for new trial gave over three hundred so-called reasons for obtaining a new trial.

The record presents a jumble of facts, fancies, and otherwise for this court to consider. The transcript in this case contains 360 typewritten pages, and the statement of facts is typewritten and bound in two books, containing 712 pages. The cause was tried by jury, consuming three weeks, and it was submitted to the jury on 83 special issues. The multiplicity of issues created a mass of difficulties from which no jury could be extricated with credit to themselves or justice to the parties. Like the widow who placed her mite in the contribution box, they did what they could under the adverse burdensome circumstances. The evolving and formulating of so many issues in any conceivable state of facts would almost inevitably lead any judge, however erudite and learned in the law, into some error. The human mind has its limitations in the wisest of men, and too great a draft on its treasury should be avoided in a trial court, where the opportunity for the study of statutes or text-books and calm consideration are hampered. In a

court noted for its conservatism and wisdom, we can account for the action in this case only on the hypothesis that it was superinduced by the zealous argument and importunity upon the part of counsel. We are fortified in this view by the fact that a court, distinguished for the expedition with which cases are disposed of, dragged its weary length along for much more time than should have been consumed in trying the cause. As an aftermath to the long drawn out trial, appellant has filed a printed brief in this court covering 178 pages, and a supplemental brief of 43 pages, with 60 assignments of error copied therein.

As said by the Supreme Court of Iowa in the recent case In re Bradley, 117 Iowa, 472, 91 N. W. 780, 782: "It would require a judicial Solomon to thread his way through a trial of this kind and avoid all errors." We shall consider those we deem salient controlling points in the case, and pretermit a discussion of the numerous unnecessary points raised in the brief.

As said by Judge Moore in Stark v. Alford, 49 Tex. 260, at page 274: "It would be a wearisome as well as bootless task to follow the sinuous tergiversations of this voluminous record."

A. F. Dame was asked on his examination, before allowed to sit as a juror, if he knew Bruner, and he denied any acquaintance with him. After the trial had ended, it was shown that Dame knew Bruner in Brownsville. Dame admitted that he had known Bruner in Brownsville; had ridden with him in an automobile there. He also admitted that during the progress of the trial he had met and talked to Bruner and had told him that he wanted a drink and asked Bruner if he had not brought liquor with him from Brownsville, and Bruner said yes that he had brought "four quarts of America Straight." It was shown by one Scoggins, who sang in the choir with Dame in probably the largest church in San Antonio, that he, Dame, had been to a drinking party with Bruner and "the boys." This occurred during the progress of the trial. Immediately after the trial, Dame admitted going to the Blue Bonnet Hotel and drinking with Bruner, two appellees, and L. B. Otey and Geo. N. Otey, two attorneys for appellees. Cameron and Mobley were designated as "the boys" in their argument before this court, and also in their briefs. Dame admitted that at the drinking bout Bruner told him he would take care of him, Dame. The conduct of Dame was inexcusable and improper even on his own ad-

missions; and the testimony of others tends to show that, in defiance of duty and decency, Dame not only talked with Bruner, but had admitted that he spent an evening with Bruner and "the boys" in drinking liquor, no doubt smuggled and held in possession in violation of the Volstead Act. The particulars of the conduct of Dame during and after the trial clearly indicate that he was a prejudiced and unfair juror and could not have rendered a just verdict. To permit such conduct on the part of a juror would be a travesty upon the law and a reflection on the jury system of our state. This man, who held conversations during the trial with the man who had engineered the sale to appellant, was the foreman of the jury, and, after signing the verdict, in hot haste hurried to the rooms of appellees and had a hilarious time with them on bootleg or smuggled liquor. This foreman seems to be a handshaker as well as a bibulous companion, and doubtless had great influence with the jury by his friendly manners, as well as through the distribution of sweetmeats to them. No juror with a proper sense of the decorum would have hurried away to attend a drinking party with one of the parties, and, if possible, it was worse conduct to drink with them during the course of the trial. The admissions of the juror alone throw doubt on his fairness and justice, and such conduct will not be tolerated in the courts of the country.

This is a time of criticism and a sneering at judicial honor and fairness, and this court cannot permit any conduct that will tend to sustain the slanders against the courts and juries of the country.

We overrule the assaults upon the pleadings of appellees. We do not deem it necessary to pass upon the numerous assignments of error, because the errors of which complaint is made may not occur on another trial. We will not enter into a discussion of the facts, but will merely say that several of the answers to the multifarious issues are not supported by the facts.

The judgment will be reversed, and it is hoped that on another trial the facts may be confined strictly to the issues; that the pleadings may be abbreviated; and a precise terse submission be made to guide an impartial jury.

Because of the reckless disregard of his obligations and duties upon the part of the foreman of the jury, the judgment is reversed, and the cause remanded.